UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JUDITH BRODY, | 2:09-cv-1732-LDG-PAL |
| Plaintiff, | |
| v. | **ORDER** |
| ITT EDUCATIONAL SERVICES, INC., | |
| Defendant. | |

Plaintiff Judith Brody brought this action against ITT Educational Services, Inc. ("ITT"), her former employer, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. ITT has filed a motion for summary judgment on Brody's claims (#39, opp'n #45, reply #51). For the reasons stated herein, the court denies ITT's motion.

**I. Summary Judgment Standard**

A grant of summary judgment is appropriate only where the moving party has demonstrated through "the pleadings, the discovery and disclosure materials on file, and any affidavits" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Christopher v. SmithKline Beecham Corp.*, --- F.3d ---, 2011 WL 489708, at *4 (9th Cir. Feb. 14, 2011); *see* Fed. R. Civ. P. 56 (a), (c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). All justifiable inferences must be viewed in the light most favorable to the non-moving party. *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.

2001). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. *Id.* The party opposing summary judgment "must cite to the record in support of the allegations made in the pleadings to demonstrate that a genuine controversy requiring adjudication by a trier of fact exists." *Taybron v. City & Cnty. of S.F.*, 341 F.3d 957, 960 (9th Cir. 2003). If the non-moving party meets its burden, summary judgment must be denied. *See* Fed. R. Civ. P. 56(a).

## II. Discrimination under the ADA

The ADA makes it unlawful for a covered employer to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). It is also unlawful for an employer to discriminate by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity . . . ." *Id.* § 12112(b)(5)(A). "Reasonable accommodations may include making facilities accessible to individuals with disabilities, adjusting work policies, or reassignment to vacant positions." *Kaplan v. City of N. Las Vegas*, 323 F.3d 1226, 1231 (9th Cir. 2003).

To state a prima facie case under the ADA, a plaintiff must demonstrate that: "(1) she is a disabled person within the meaning of the statute; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job she holds or seeks; and (3) that she suffered an adverse employment action because of her disability." *Braunling v. Countrywide Home Loans Inc.*, 220 F.3d 1154, 1156 (9th Cir. 2000); *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d

1243, 1246 (9th Cir. 1999).  "Under the ADA, when an employee establishes a prima facie case of discrimination because of a disability, and the employer provides a non-discriminatory reason for [the adverse employment action] which disclaims any reliance on the employee's disability in having taken the employment action, the analysis developed in *McDonnell Douglas* for suits under Title VII of the Civil Rights Act of 1964 applies." *Snead v. Metro. Property & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001) (citations and internal quotation marks omitted).  Under the *McDonnell Douglas* burden shifting approach, if a plaintiff makes out a prima facie case and the employer articulates a legitimate, non-discriminatory reason for its adverse employment action, "the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

      A plaintiff can prove pretext either "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000).  However, a plaintiff's indirect evidence must be both specific and substantial to overcome the legitimate reasons put forth by an employer. *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 659 (9th Cir. 2003).  Furthermore, "[w]hile the burden of production may shift, the 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  Here, ITT argues that Brody cannot establish a prime facie case because she was neither "disabled" nor "qualified" during the relevant

employment period, and that, in any event, summary judgment is nevertheless proper because Brody cannot demonstrate that ITT's reasons were pretextual.[1]

      The ADA defines the term "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Brody presents no claim or argument that she was "disabled" due to a record of impairment, and she has failed to demonstrate any genuine issue of material fact that ITT regarded her as having any such impairment. That Dr. Linzmaier allegedly told Brody to consider disability leave if she felt she could not perform her job functions and requested forms for Brody's short term disability benefits after Brody told him that she could not work due to her MS symptoms and treatment is not sufficient to support a finding that ITT regarded Brody as having a "disability" as defined in the ADA. *See E.E.O.C. v. United Parcel Serv., Inc.*, 306 F.3d 794, 805 (9th Cir. 2002) ("Casual references to disability ... do not support a finding" that an employer regards an employee as disabled); *Mead v. Bank of Am.*, No. 3:06-cn-00626-HDM-VPC, 2008 WL 706632, at *4 (D. Nev. Mar. 14, 2008) ("[P]laintiff claims that the comment of her supervisor Steve Russell that she should 'take disability' was an indication that the bank believed she was disabled. This reference stated alone is insufficient to establish a triable issue that that [sic] the bank believed plaintiff was disabled as that term is defined under the statute."). Therefore, to survive summary judgment on this issue, Brody must demonstrate a genuine issue of material fact that she suffered from "a physical or mental impairment that substantially limit[ed] one or more of [her] major life activities . . . ." 42 U.S.C. § 12102(2)(A).

---

[1] Brody bases her ADA claims on factual conduct occurring prior to the effective date of ADA amendments. Because these ADA amendments do not have retroactive application, the court analyzes Brody's claims without regard to any such amendments. *See Becerril v. Pima Cnty. Assessor's Office*, 587 F.3d 1162, 1164 (9th Cir. 2009).

"The inquiry into whether a person is disabled under [§ 12102(2)(A)] involves a three-part analysis: (1) does the individual have a physical or mental impairment; (2) does such impairment limit one or more of the major life activities of the individual; and (3) is such limitation substantial." *Puckett v. Park Place Entm't Corp.*, 332 F. Supp. 2d 1349, 1353 (D. Nev. 2004) (citing 42 U.S.C. § 12102(2)(A); *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 194-95 (2002)). ITT apparently concedes, for purposes of its present motion only, "that Plaintiff has a physical impairment, i.e., MS, and that this impairment affects in some manner various major life activities identified in her Opposition: seeing, walking, waste elimination, remembering/focusing and working." Def.'s Reply 3, ECF No. 51. ITT argues, however, that Brody cannot demonstrate that she was "substantially limit[ed]" in any of these activities because her MS diagnosis does not alone establish a substantial limitation of major life activities under the ADA and because "[a]ny symptomatic episodes Plaintiff experienced during this period were of limited duration and did not impose severe restrictions on Plaintiff's daily activities." Def.'s Mot. for Summ. J. 19-20, ECF No. 39.

The 2006 ADA statute does not define "substantially limits." According to the EEOC regulations, "substantially limit[ed]" means "[u]nable to perform a major life activity that the average person in the general population can perform"; or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 CFR § 1630.2(j) (2006); *Toyota*, 534 U.S. at 196. In determining whether an individual is substantially limited in a major life activity, the regulations instruct that the following factors should be considered: "[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." *Toyota*, 534 U.S. at 195-96 (citing 29 CFR § 1630.2(j)(2)(i)-(iii)).

In evaluating these regulations and the statutory phrase "substantially limits," the Supreme Court has observed: "'[S]ubstantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree' . . . The word 'substantial' thus clearly precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities." *Id.* at 196-97. The Court also noted that legislative intent demonstrated that "these terms need to be interpreted strictly to create a demanding standard for qualifying as disabled." *Id.* at 197; *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1064 (9th Cir. 2005). Based on these considerations, the Supreme Court held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives" and the "impairment's impact must also be permanent or long term." *Toyota*, 534 U.S. at 197.

Courts make ADA disability determinations on a case-by-case basis. *See id.* at 198. As the Supreme Court noted, "[i]t is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment" because "the ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.' " *Id.* (quoting *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999)). Contrary to Brody's suggestion, her MS diagnosis is not alone sufficient to establish that this impairment "substantially limits" her "major life activities." *Id.* at 195 ("Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity."); *see also Brunker v. Schwan's Home Serv., Inc.*, 583 F.3d 1004, 1008 (7th Cir. 2009); *Nyrop v. Indep. Sch. Dist. No. 11*, 616 F.3d 728, 734 (8th Cir. 2010). Brody must, therefore, introduce evidence that her MS "substantially limit[ed]" her "major life activities" while she was employed by ITT. Brody argues that, during a relapsing phase, her MS substantially impaired a number of her "major life activities," including:

seeing, walking, waste elimination, remembering/focusing and working.  Brody also testified that she suffered from extreme exhaustion and her symptoms intensified as the day proceeded.  ITT argues, however, that Brody was not substantially impaired because these symptoms only occurred during a relapsing phase.  The relapsing nature of Brody's symptoms is not alone dispositive.  *See E.E.O.C. v. Chevron Phillips Chem. Co.*, LP, 570 F.3d 606, 618 (5th Cir. 2009) ("Many courts have recognized that relapsing-remitting conditions like multiple sclerosis, epilepsy, or colitis can constitute ADA disabilities depending on the nature of each individual case.").  Furthermore, viewing the evidence in the light most favorable to Brody, she has demonstrated a genuine issue of material fact that her MS impairment was substantial.

The term "qualified individual with a disability " means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  ITT argues that Brody was not "qualified" because her doctor recommended Brody for permanent disability on August 11, 2006, just four days before Brody claims that she returned for work.  This argument, however, does not address Brody's claim that ITT failed to make reasonable accommodations prior to that date.  Furthermore, genuine issues of fact exist regarding whether her doctor's recommendation for permanent disability considered factors relevant to the current analysis, such as "reasonable accommodation."  *See Johnson v. State, Oregon Dep't of Human Res., Rehab. Div.*, 141 F.3d 1361, 1370 (9th Cir. 1998); Pl.'s Opp'n 19.

Brody has raised genuine issues of material fact regarding her reasonable accommodation and termination claims.  "Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations." *Humphrey v. Memorial Hosps. Ass'n*, 239 F.3d 1128, 1137-38 (9th Cir. 2001) (citing *Barnett v. U.S. Air*, 228 F.3d 1105, 1114 (9th Cir. 2000)).  The interactive process requires communication and good-faith

exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process. *Humphrey*, 239 F.3d at 1138. "An appropriate reasonable accommodation must be effective, in enabling the employee to perform the duties of the position." *Barnett*, 228 F.3d at 1115. Here, viewing the evidence in the light most favorable to Brody, genuine issues of fact preclude summary judgment on the issues of whether ITT participated in the interactive process in good faith in response to Brody's repeated requests for reasonable accommodation and whether mandatary night hours constituted essential functions of her employment position. Furthermore, viewing the evidence in the light most favorable to Brody, she has alleged the minimum quantum of evidence requisite to demonstrate a genuine issue of fact that ITT's proffered reason for Brody's termination was mere pretext for unlawful disability discrimination. Therefore, viewing the facts in the light most favorable to Brody, genuine issues of material fact prevent entry of summary judgment.

### III. Conclusion

For the reasons stated herein,

THE COURT HEREBY ORDERS that ITT's motion for summary judgment (#39) is DENIED

Dated this 30th day of March, 2011.

_____
Lloyd D. George
United States District Judge